## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

FIREPITART.COM LLC,      )
                              )
      **Plaintiff,**           )
**v.**                          )     **Civil Action No. 3:09-cv-00725**
                              )     **Chief Judge Todd Campbell**
**JOHN T. UNGER,**          )     **Magistrate Judge Joe Brown**
                              )
      **Defendant.**         )     **JURY DEMAND**
_____  )
                              )
**JOHN T. UNGER,**          )
                              )
      **Counter-Plaintiff and**   )
      **Third-Party Plaintiff,**   )
                              )
**and**                        )
                              )
**JOHN T. UNGER, LLC,**     )
                              )
      **Intervening Counter-Plaintiff**  )
      **and Third-Party Plaintiff,**  )
                              )
**v.**                          )
                              )
**FIREPITART.COM, LLC,**    )
                              )
      **Counter-Defendant,**    )
                              )
**and**                        )
                              )
**RICK WITTRIG,**         )
                              )
      **Third-Party Defendant.**  )

---

## ANSWER, COUNTERCLAIM & THIRD PARTY COMPLAINT
## OF DEFENDANT JOHN T. UNGER AND JOHN T. UNGER, LLC

---

       Defendant, John T. Unger, by and through his attorneys, Bone McAllester Norton PLLC,

and Traverse Legal, PLC, answers Plaintiff's First Amended Complaint as follows:

1. Mr. Unger admits the averments in Paragraph 1.

2. Mr. Unger admits the averments in Paragraph 2.

3. Mr. Unger admits the court has subject matter jurisdiction.

4. Mr. Unger denies this Court has personal jurisdiction over him in his individual capacity and states that Plaintiff has failed to join an indispensable party, John T. Unger, LLC. Mr. Unger denies the remaining averments in Paragraph 4.

5. Mr. Unger denies the averments in Paragraph 5.

6. Mr. Unger admits that Plaintiff is a manufacturer and provider of fire bowls, but lacks knowledge or information sufficient to form a belief about the truth of the averments that fire bowls manufactured by Plaintiff are of high-quality or in the nature of outdoor furniture products, and therefore denies the same.

7. Upon information and belief, Mr. Unger admits the averments in Paragraph 7.

8. Mr. Unger admits his counsel sent a letter to Plaintiff dated April 30, 2009, stating that Plaintiff's fire bowls were "infringing" and "reproductions of works subject to [Mr. Unger's] copyright registrations." Mr. Unger denies the remaining averments in Paragraph 8.

9. Mr. Unger denies the averments in Paragraph 9.

10. Mr. Unger admits the averments in Paragraph 10.

11. Mr. Unger admits communicating with Artful Home, but denies the remaining averments in Paragraph 11.

12. Mr. Unger lacks knowledge or information sufficient to form a belief about the truth of the averments in Paragraph 12 that Artful Home has terminated its business relationship with Plaintiff, and denies that any such termination, if it occurred at all, was the direct result of Mr. Unger's actions.

13.     Mr. Unger admits that he owns valid copyright registrations in numbers VA 1-667-092, VA 1-667-096 and VA 1-667-181 and admits that communications took place between legal counsel for the parties.  Mr. Unger denies the remaining averments in Paragraph 13, as his copyrighted works are original and as the copyrights in his works are valid.

14.     Mr. Unger admits the averments in Paragraph 14.

15.     Mr. Unger admits the averments in Paragraph 15.


**COUNT I**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT**
**(28 U.S.C. § 2201 *et seq.*; 17 U.S.C. 101 *et seq.*)**

16.     Mr. Unger re-asserts his responses to the above averments as if fully set forth herein.

17.     Mr. Unger admits that an actual controversy exists, but denies that it exists because of Mr. Unger's actions, and instead states that the actual controversy exists because of Plaintiff's copying, manufacturing, marketing and selling replicas of Mr. Unger's registered designs.

18.     Upon information and belief, Mr. Unger admits that Plaintiff intends to continue manufacturing, marketing and selling Plaintiff's replicas of Mr. Unger's designs.  That Plaintiff included such fact in his Amended Complaint is evidence that Plaintiff's infringement of Mr. Unger's works is knowing, willful and intentional.

19.     Mr. Unger denies that Plaintiff's manufacturing, marketing and selling of Plaintiff's fire bowls is lawful.  To the contrary, Plaintiff's manufacturing, marketing and selling of its own fire bowls, which are substantially similar, if not strikingly similar, to Mr. Unger's

firebowls, is *un*lawful and constitutes, among other things, infringement on Mr. Unger's registered copyrights.

20.     Mr. Unger admits that an actual controversy exists regarding whether Plaintiff's copying, manufacturing, marketing and selling replicas of Mr. Unger's registered designs constitutes, among other things, infringement in violation of the Copyright Act.

21.     Mr. Unger denies that Plaintiff's activities are not harmful and do not threaten Defendant's lawful rights.  In fact, Mr. Unger states that Plaintiff's copying, manufacturing, marketing and selling replicas of Mr. Unger's registered designs constitutes, among other things, infringement in violation of the Copyright Act.

22.     Mr. Unger denies that Plaintiff has or will suffer any damage as a result of Mr. Unger's actions.  To the contrary, Plaintiff's copying, manufacturing, marketing and selling replicas of Mr. Unger's registered designs activities has damaged and will continue to damage Mr. Unger.


**COUNT II**
**DECLARATORY JUDGMENT OF COPYRIGHT**
**INVALIDITY AND UNEFORCEABILITY**
**(28 U.S.C. § 2201(a); 17 U.S.C. 101 *et seq.*)**

23.     Mr. Unger re-asserts his responses to the above averments as if fully set forth herein.

24.     Mr. Unger admits that an actual controversy exists, but denies that it exists because of Mr. Unger's actions, and instead states that the actual controversy exists because of Plaintiff's copying, manufacturing, marketing and selling replicas of Mr. Unger's registered designs.

25.     Mr. Unger denies the averments in Paragraph 25.

26.     Mr. Unger admits that an actual controversy exists, and admits that Plaintiff seeks a declaration that Mr. Unger's registered copyright in its Fire Pits design is not valid or enforceable, but denies that Plaintiff is entitled to such relief.

27.     Mr. Unger denies that Plaintiff has or will suffer any damage as a result of Mr. Unger's actions.   To the contrary, Plaintiff's copying, manufacturing, marketing and selling substantially similar, if not strikingly similar, replicas of Mr. Unger's registered designs has damaged and will continue to damage Mr. Unger.

## COUNT III
## VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT
### (Tenn. Code Ann. § 47-18-101 *et seq.*)

28.     Mr. Unger re-asserts his responses to the above averments as if fully set forth herein.   Plaintiff has named the wrong party and has failed to join an indispensable party, John T. Unger, LLC.

29.     Mr. Unger denies the averments in Paragraph 29.

30.     Mr. Unger denies the averments in Paragraph 30.

31.     Mr. Unger denies the averments in Paragraph 31.

32.     Mr. Unger denies the averments in Paragraph 32.

## COUNT IV
## INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS

33.     Mr. Unger re-asserts his responses to the above averments as if fully set forth herein.   Plaintiff has named the wrong party and has failed to join an indispensable party, John T. Unger, LLC.

34.     Upon information and belief, Mr. Unger admits Plaintiff had an existing business relationship with Artful Home, but denies the remaining averments in Paragraph 34 and denies that any relationship between Plaintiff and Artful Home was lawful, in light of Plaintiff's infringement of Mr. Unger's copyrights.

35.     Upon information and belief, Mr. Unger admits Plaintiff had an existing business relationship with Artful Home, but denies the remaining averments in Paragraph 35 and denies that any relationship between Plaintiff and Artful Home was lawful, in light of Plaintiff's infringement of Mr. Unger's copyrights.

36.     Mr. Unger denies the averments in Paragraph 36.

37.     Mr. Unger denies the averments in Paragraph 37.

38.     Mr. Unger denies the averments in Paragraph 38.

39.     Mr. Unger denies the averments in Paragraph 39.

40.     Mr. Unger denies the averments in Paragraph 40.

41.     Mr. Unger denies the averments in Paragraph 41.

42.     Mr. Unger denies each and every allegation of the Complaint not specifically admitted herein.

43.     Mr. Unger further states that the Complaint fails to state a claim for which relief can be granted, that Plaintiff should be estopped from obtaining any relief, that Plaintiff comes to this Court with unclean hands, that Plaintiff is not entitled to any relief sought, and that the Court lacks personal jurisdiction over Mr. Unger.

## PRAYER FOR RELIEF

Mr. Unger respectfully prays:

1.     That each of Plaintiff's claims for relief be denied;

2.      That the Court Dismiss Plaintiff's claims;

3.      Award Mr. Unger his attorneys' fees and costs;

4.      Award Mr. Unger the relief requested in counterclaim to be filed in this action;

5.      Award Mr. Unger such further relief as the Court deems appropriate.


## JOHN UNGER'S & JOHN T. UNGER, LLC'S
## COUNTERCLAIM & THIRD-PARTY COMPLAINT

Defendant/Counter-Plaintiff John T. Unger ("Mr. Unger") submits the following Counterclaim against firepitart.com, LLC and Third Party Complaint against Rick Wittrig. Intervening Counter-Plaintiff John T. Unger, LLC joins in the Counterclaim and Third-Party Complaint. Collectively, Mr. Unger and John T. Unger, LLC are referred to herein as "Counter-Plaintiffs."


## I.  PARTIES, JURISDICTION, AND VENUE

1.      Mr. Unger is a citizen of the State of Michigan and resides in Antrim County, Michigan.

2.      John T. Unger, LLC is limited liability company, organized under the laws of Michigan, with its principal place of business in Mancelona, Michigan. Mr. Unger is the LLC's sole member. The LLC does business as John T. Unger, John Unger and/or John T. Unger Studio.

3.      John T. Unger, LLC has an exclusive license from Mr. Unger to use his intellectual property rights in connection with the business.

{00406083.3}

4.      Pursuant to Fed. R. Civ. P. 24, John T. Unger, LLC should be permitted to intervene as of right or with permission.  It claims an interest related to the intellectual property and actions that are the subject of this Counterclaim and Third-Party Complaint, and is so situated that the disposing of the action may, as a practical matter, impair or impede its ability to protect its interests, and the other parties do not adequately represent that interest.  Further, John T. Unger, LLC has claims that share common questions of law and fact with the main action.

5.      Counter-Defendant firepitart.com is a Tennessee limited liability company with its principal place of business in Lebanon, Tennessee.

6.      Third-Party Defendant Rick Wittrig ("Mr. Wittrig") is a citizen of the State of Tennessee and is domiciled in Wilson County, TN.  Upon information and belief, Mr. Wittrig is the owner and sole manager of Counter-Defendant firepitart.com, LLC.  (Collectively, Mr. Wittrig and firepitart.com LLC are referred to herein as "Counter-Defendants.")

7.      Upon information and belief, and based on the allegations in the First Amended Complaint in this lawsuit (Doc. 6), Counter-Defendants manufacture, market and sell steel fire pits ("Fire Pits") that are substantially similar, if not strikingly similar, copies of Mr. Unger's registered copyrights.    Counter-Defendants make such sales over the Internet at http://www.firepitart.com.

8.      Pursuant to Fed. R. Civ. P. 13(h) and 19, Mr. Wittrig must be joined in this suit because, without his joinder, this Court cannot accord complete relief among the existing parties. Alternatively, and pursuant to Fed. R. Civ. P. 20, Mr. Wittrig should be joined because a right to relief is asserted against him jointly, severally, or in the alternative that arises out of the same transaction or occurrence or series of occurrences and questions of law and fact common to both Counter-Defendants in this action.

9.      Upon information and belief, Counter-Defendants committed the acts described herein. Counter-Defendants authorized, participated in, acquiesced to, consented to, and initiated in the copying, reproduction, display, derivation, and distribution of Counter-Plaintiffs' copyrighted works. The display, copying, derivation, reproduction, and distribution herein was an action that the Counter-Defendants authorized, controlled, directed, or had the ability to authorize, control or direct, and is an action for which the Counter-Defendants are liable.

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1338.

11.     This Court has supplemental jurisdiction over the claims in this Counterclaim and Third-Party Complaint that arise under the common law in the State of Tennessee pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

12.     This Court has personal jurisdiction over Counter-Defendants.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).


## II. COUNTER-PLAINTIFFS' BUSINESS

14.     Mr. Unger is the owner of the John T. Unger Studio, located in Mancelona, MI. He is also the sole member of John T. Unger, LLC.

15.     Since 2005, Mr. Unger has created and sold artisan firebowls made of recycled steel. Since December 2007, when John T. Unger, LLC was created, all marketing, manufacturing, and sales of Mr. Unger's designs have been performed by John T. Unger, LLC. John T. Unger, LLC sells firebowls through several channels, including its website, located at http://www.johntunger.com, the artist portal Etsy, located at http://www.etsy.com, social

networking services including, but not limited to, Twitter, and through Mr. Unger's studio located in Mancelona, MI.

16.    Counter-Plaintiffs' art, including his firebowls,  is well and favorably known across the United States.  Counter-Plaintiffs' art has appeared in books, podcasts, magazines, newspapers, web video, television programs, and exhibit catalogs.  Counter-Plaintiffs' works are widely distributed throughout the United States and have appeared in multiple publications, including but not limited to, *The Daily Book of Art*, *The Artful Home*, *Orlando Magazine*, *Microsoft Home Magazine*, *Washington Spaces Magazine*, *Pages Magazine*, *The San Francisco Chronicle*, DIY Network's *Holiday Gift Guide*, a book called *I'd Rather be in the Studio*, a California mathematics textbook published by Houghton Mifflin, and on featured television programs on HGTV and WNIT (Elkhart, IN).

## III.  COUNTER-PLAINTIFFS' COPYRIGHTS

17.    Since 2005, Mr. Unger has created and sold artisan firebowls.  These firebowls are wholly original and copyrightable subject matter.  Mr. Unger's designs in the firebowls at issue in this case were first published on the following dates: "The Great Bowl of Fire" on May 31, 2005; "Waves O' Fire" and "The Beach Burner Portable Bonfire" on July 8, 2007; and "Great Fiery/Flaming Lotus," "The Big Bowl O' Zen," "King Isosceles," "Goblet O' Fire" on November 6, 2007.  Photographs of the above artworks are attached hereto as collective **Ex. A**.

18.    Mr. Unger applied for and was granted copyright registration by the Register of Copyrights at the United States Copyright Office for "Great Fiery/Flaming Lotus," "The Big Bowl O' Zen," "King Isosceles," and "Goblet O' Fire" on June 4, 2009 (Registration No. VA 1-667-181); for "Waves O' Fire" on April 17, 2009 (Registration No. VA 1-667-096); and for

"The Great Bowl O' Fire" on April 17, 2009 (Registration No. VA 1-667-092) (hereinafter the "Works"). Copies of Certificates of Copyright Registration in the above artworks are attached hereto as collective **Ex. B**.

19.     Mr. Unger is the author of and copyright owner of the Works, including all exclusive rights, including without limitation those listed in 17 U.S.C. § 106, to the Works.

20.     Counter-Plaintiffs provide explicit notice of their copyright rights in the Works on the website located at http://www.johntunger.com/, which states "All designs, art + content © John T. Unger."

## IV. COUNTER-PLAINTIFFS' TRADE DRESS

21.     As stated above, Counter-Plaintiffs' Works have obtained such publicity and wide-spread display that Counter-Plaintiffs' firebowls have come to signal to the public that Counter-Plaintiffs are the source of the firebowls.

22.     As such, the configuration of Counter-Plaintiffs' Works identify their goods and distinguish them from those of others (the "Trade Dress"). Counter-Plaintiffs' Trade Dress is depicted in the images attached hereto as collective **Ex. A**.

23.     Counter-Plaintiffs' Trade Dress is inherently distinctive.

24.     Alternatively, Counter-Plaintiffs' Trade Dress has acquired distinctiveness.

25.     Counter-Plaintiffs Trade Dress is an inherently distinctive symbol of great consumer goodwill. As a result of its distinctiveness, Counter-Plaintiffs' Trade Dress is associated by consumers with Counter-Plaintiffs, and consumers view that Trade Dress as designating the source of Counter-Plaintiffs' products.

26.     Counter-Plaintiffs' Trade Dress has achieved secondary meaning.

27.     Counter-Plaintiffs' Trade Dress is not functional.


## V.  COUNTER-DEFENDANTS' UNLAWFUL ACTIONS

28.     Counter-Defendants' business, firepitart.com, LLC, involves the sale of fire pits that are replicas of Counter-Plaintiffs' Works and Trade Dress.  Counter-Defendants are direct competitors of Counter-Plaintiffs.  Counter-Plaintiffs' Works and Trade Dress were created and published prior to Counter-Defendants' Infringing Works, which are direct copies of Counter-Plaintiffs' Works and Trade Dress.

29.     Third-Party Defendant Rick Wittrig is an officer of firepitart.com, LLC.  He has the right and ability to supervise firepitart.com, LLC's infringing activity, and he exercises such right by willfully and materially contributing to, inducing, directing or causing firepitart.com, LLC's infringement on Counter-Plaintiffs' rights in the Works.  He also has a financial interest in, and enjoys a direct financial benefit from, the infringing activity of firepitart.com, LLC.  As such, Mr. Wittrig is personally liable for firepitart.com, LLC's copyright infringement, trade dress infringement and other torts under the theories of vicarious liability and contributory liability.

30.     Counter-Defendants have displayed, reproduced, and distributed Counter-Plaintiffs' Works and made derivative works that were substantially similar to, if not an exact replica of, Counter-Plaintiffs' works ("Infringing Works").  Specifically, Counter-Defendants' work "Ring of Fire" is directly copied from Counter-Plaintiffs' "The Great Bowl of Fire"; Counter-Defendants' work "Wave" is directly copied from Counter-Plaintiffs' "Waves O' Fire"; Counter-Defendants' work "Triptic" is directly copied from Counter-Plaintiff's "King Isosceles"; Counter-Defendants' "Bowl of Fire" is directly copied from Counter-Plaintiffs' "Big

Bowl O' Zen"; and Counter-Defendants' works "Lotus Blossom" and "Tulip" are directly copied from Counter-Plaintiffs' "Great Fiery Lotus." Photographs of Counter-Defendants' Infringing Works attached hereto as collective **Ex. C.** Compare Ex. A with Ex. C.

31.  Upon information and belief, Counter-Defendants have sold the Infringing Works over the Internet at http://www.firepitart.com/ and through trade shows, arts festivals, and distributors. This is in direct violation of Counter-Plaintiffs' exclusive rights to distribute, display, reproduce, and make derivative works of the Works under 17 U.S.C. § 107.

32.  Counter-Defendants continue to distribute, sell, display, reproduce, and make derivative works of Counter-Plaintiffs' Works. These actions are in direct violation of Counter-Plaintiffs' exclusive rights under 17 U.S.C. § 107.

33.  On April 30, 2009, Mr. Unger informed Counter-Defendants of his copyright rights and claims of infringement through a letter. Despite this notification, Counter-Defendants continued to distribute, display, reproduce, and make derivative works of Counter-Plaintiffs' Works.

34.  On June 9, 2009, Mr. Unger again informed Counter-Defendants of his copyright rights and claims of infringement through a letter. Despite this additional notification, Counter-Defendants continued to distribute, display, reproduce, and make derivative works of Counter-Plaintiffs' Works.

35.  Again, on August 4, 2009, Mr. Unger sent a final letter to Counter-Defendants demanding that Counter-Defendants cease their infringing activity. That letter was again ignored.

36.     From these letters, Counter-Defendants had actual and constructive knowledge of Counter-Plaintiffs' copyright rights in the Works, yet they intentionally and willfully continued to infringe upon Counter-Plaintiffs' exclusive rights.

37.     According to Paragraph 18 of the First Amended Complaint (Doc. 6), Counter-Defendants "intend[] to continue manufacturing, marketing and selling [the Infringing Works]."

38.     Counter-Defendants have created actual confusion in the minds of the public. At least one customer at an art show in Atlanta has been actually confused by Counter-Defendants' Infringing Works, thinking they were Counter-Plaintiffs' Works.

39.     At no time have Counter-Plaintiffs authorized Counter-Defendants to reproduce, distribute, display, or create derivative copies of Counter-Plaintiffs' Works. At no time have Counter-Plaintiffs authorized Counter-Defendants to imitate Counter-Plaintiffs' works or falsely induce the purchase of Counter-Defendants' fire pits by deceiving the public as to their source.

## VI.  CAUSES OF ACTION

### COUNT I
### Copyright Infringement

40.     Counter-Plaintiffs restate and incorporate the above paragraphs as though fully restated herein.

41.     Mr. Unger owns a valid copyright in and to the original Works that have been copied by Counter-Defendants, and has licensed his rights to John T. Unger, LLC.

42.     Counter-Plaintiffs have the exclusive rights to, among other things, reproduce Counter-Plaintiffs' Works, distribute copies of their Works to the public, display their Works, and to authorize such reproduction, distribution and display of their Works.

43.     Counter-Defendants had access to Counter-Plaintiffs' Works through their display at Counter-Plaintiffs' website, art shows and publicly-available publications.

44.     Counter-Defendants, without authority, have made and are making, causing to be made, have reproduced and are reproducing, have displayed and are displaying, and have distributed and are distributing for their own commercial use, and in order to disrupt Counter-Plaintiffs' business, unauthorized copies of Counter-Plaintiffs' Works.

45.     Counter-Defendants' copies are direct copies of Counter-Plaintiffs' Works, which are original and protected by valid copyright registrations.

46.     Counter-Defendants' copies are substantially similar to, if not exact replicas of, Counter-Plaintiffs' Works.

47.     Counter-Defendants are displaying replicas of Counter-Plaintiffs' Works at <firepitart.com>.

48.     Counter-Defendants are distributing replicas of Counter-Plaintiffs' Works via the Internet to consumers.

49.     Counter-Defendants are distributing replicas of Counter-Plaintiffs' Works via trade show sales, art expos, and distributors.

50.     Counter-Defendants are distributing replicas of Counter-Plaintiffs' Works through various distributors.

51.     Counter-Defendants' conduct constitutes direct infringement of Counter-Plaintiffs' exclusive rights under the Copyright Act.

52.     Counter-Defendants' actions are in violation of the copyrights owned and/or licensed by Counter-Plaintiffs.

53.     Counter-Defendants' infringement of Counter-Plaintiffs' copyrights was willful, intentional, and purposeful, in disregard of and indifferent to Counter-Plaintiffs' rights, as Counter-Defendants had knowledge that their actions constituted an infringement.

54.     As a result of Counter-Defendants' acts of copyright infringement, Counter-Plaintiffs have suffered damages.

55.     Counter-Plaintiffs are entitled to recover damages from Counter-Defendants, jointly and severally, as a result of Counter-Defendants' direct copyright infringement. Counter-Plaintiffs are currently unable to ascertain the full extent of the monetary damages they have suffered from Counter-Defendants' acts of copyright infringement, but Counter-Plaintiffs are informed and believe, and therefore allege, that Counter-Plaintiffs have sustained such damages in an amount exceeding $100,000.

56.     Counter-Plaintiffs are further entitled to recover the gains, profits, and advantages that Counter-Defendants have obtained and continue to obtain as a result of their direct copyright infringement. Counter-Plaintiffs are at present unable to ascertain the full extent of the gains, profits, and advantages Counter-Defendants have obtained by reason of their copyright infringement, but Counter-Plaintiffs are informed and believe, and therefore allege, that Counter-Defendants have obtained such gains, profits, and advantages in an amount exceeding $100,000.

57.     Counter-Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Counter-Plaintiffs great and irreparable injury that cannot be fully compensated or measured in monetary damages. Counter-Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Counter-Plaintiffs are entitled to a preliminary and permanent injunction requiring Counter-Defendants to employ reasonable methodologies to prevent or limit infringement of Counter-Plaintiffs' copyrights.

## COUNT II
### Federal Unfair Competition, Lanham Act § 43(a), 15 U.S.C. § 1125(a)

58.     Counter-Plaintiffs restate and incorporate the above paragraphs as though fully restated herein.

59.     Counter-Defendants' sale of fire pits in person and through their website constitutes use in commerce and Counter-Defendants' false designation of origin has had a substantial economic impact on interstate commerce.

60.     Consumers who encounter Counter-Defendants' Infringing Works that are confusingly similar to Counter-Plaintiffs' Trade Dress through Counter-Defendants' website, in person, and at art shows, have become confused and deceived as to the origin of these fire pits.

61.     Counter-Defendants' display, advertisement, and sale of fire pits that are confusingly similar to Counter-Plaintiffs' Trade Dress constitute false designation of origin under the Lanham Act.

62.     Counter-Defendants' have caused actual confusion as to the origin of their Infringing Works.  At least one customer at an art show in Atlanta has been actually confused by Counter-Defendants' Infringing Works, thinking they were Counter-Plaintiffs' Works.

63.     Counter-Defendants' display, advertisement, and sale of fire pits is likely to cause mistake, confusion, or to deceive consumers as to Counter-Defendants' affiliation, connection, or association with Counter-Plaintiffs, or as to Counter-Plaintiffs' sponsorship or approval of Counter-Defendants' goods.

64.     The items for which trade dress protection is claimed are not functional.

65.     This false designation of origin has created both actual and potential confusion in the minds of the consuming public.

66.     Counter-Defendants have unfairly profited from this false designation of origin.

{00406083.3}

67.     Because of Counter-Defendants' acts and threatened acts of unfair competition, Counter-Plaintiffs have sustained, and will continue to sustain, substantial injury, loss and damage to their ownership interest in their Trade Dress.

68.     Because of Counter-Defendants' acts and threatened acts of unfair competition, Counter-Defendants have obtained, and will continue to obtain, gains, profits and advantages to which they are not in equity or in good conscience entitled, and which have unjustly enriched Counter-Defendants.

69.     Counter-Plaintiffs will suffer irreparable harm because of Counter-Defendants' conduct, and Counter-Plaintiffs are without an adequate remedy at law.  Counter-Plaintiffs are entitled to an injunction restraining Counter-Defendants, their officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further such acts of unfair competition.

70.     Counter-Plaintiffs are also entitled to recover from Counter-Defendants, jointly and severally, the damages sustained by Counter-Plaintiffs as a result of Counter-Defendants' acts of unfair competition, and the gains, profits and advantages that Counter-Defendants have obtained as a result of such acts, in an amount in excess of the jurisdictional threshold.

<u>COUNT III</u>
<u>Common Law Unfair Competition</u>

71.     Counter-Plaintiffs restate and incorporate the above paragraphs as though fully restated herein.

72.     Counter-Defendants simulated Counter-Plaintiffs' Trade Dress for the purpose of deceiving the public and with the intent to falsely induce the purchase of Counter-Defendants' Infringing Works.

73.     Counter-Defendants imitated Counter-Plaintiffs at art shows to deceive the public as to the source of their copied works and with the intent to falsely induce the purchase of their Infringing Works.

74.     Counter-Defendants are palming off themselves as Counter-Plaintiffs and palming off Counter-Defendants' Infringing Works as being created by, manufactured by, marketed by sponsored by and/or offered for sale by Counter-Plaintiffs, thus falsely deceiving the public in order to obtain benefits properly belonging to Counter-Plaintiffs.

75.     Counter-Defendants' actions have caused both actual and potential confusion, and are likely to cause further mistake and deception as to the affiliation, connection or association of Counter-Defendants with Counter-Plaintiffs, or as to the origin of Counter-Defendants' Infringing Works, or as to sponsorship or approval by Counter-Plaintiffs of Counter-Defendants' Infringing Works or commercial activities.

76.     Because of Counter-Defendants' acts and threatened acts of unfair competition, Counter-Plaintiffs have sustained, and will continue to sustain, substantial injury, loss and damage to Counter-Plaintiffs' ownership interest in his Trade Dress.

77.     Because of Counter-Defendants' acts and threatened acts of unfair competition, Counter-Defendants have obtained, and will continue to obtain, gains, profits and advantages to which they are not in equity or in good conscience entitled, and which have unjustly enriched Counter-Defendants.

78.     Counter-Plaintiffs will suffer irreparable harm because of Counter-Defendants' conduct, and Counter-Plaintiffs are without an adequate remedy at law.  Counter-Plaintiffs are entitled to an injunction restraining Counter-Defendants, their officers, directors, agents,

employees, representatives and all persons acting in concert with them from engaging in further such acts of unfair competition.

79.     Counter-Plaintiffs are also entitled to recover from Counter-Defendants, jointly and severally, the damages sustained by Counter-Plaintiffs as a result of Counter-Defendants' acts of unfair competition, and the gains, profits and advantages that Counter-Defendants have obtained as a result of such acts, in an amount in excess of the jurisdictional threshold.

COUNT IV
Violation of Tennessee Consumer Protection Act

80.     Counter-Plaintiffs restate and incorporate the above paragraphs as though fully restated herein.

81.     Counter-Defendants have engaged, and continue to engage, in deceptive trade practices, within the meaning of the Tennessee Unfair Competition Law, codified at Tennessee Code Annotated Section 47-18-104, by falsely passing off their products and services as those of Counter-Plaintiffs; causing actual and potential confusion or misunderstanding as to Counter-Plaintiffs' affiliation, connection or association with, or certification of, Counter-Defendants and their products; representing that Counter-Defendants and their products have sponsorship or approval that they do not have; and using statements in advertisements that create a false impression of the origin of the goods offered and otherwise misrepresenting their goods.

82.     The public is likely to be substantially damaged as a result of the deceptive and unfair trade practices of Counter-Defendants.

83.     Unless permanently enjoined by this Court, Counter-Defendants will continue these unfair and deceptive trade practices, thereby deceiving the trade and the public and causing Counter-Plaintiffs immediate and irreparable injury, for which they have no adequate remedy at law.

84.     In addition, Counter-Plaintiffs are entitled, pursuant to Tenn. Code Ann. § 47-18-109, to monetary damages resulting from Counter-Defendants' unfair and deceptive acts, in an amount in excess of the jurisdictional threshold, treble damages for Counter-Defendants' willful or knowing violations of the Tennessee Unfair Competition Law, and attorneys' fees incurred by Counter-Plaintiffs in this action.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Counter-Plaintiffs respectfully request that the Court enter judgment against Counter-Defendants as follows:

A.  That the Court find in favor of Counter-Plaintiffs on all counts above;

B.  That the Court issue preliminary and permanent injunctive relief against Counter-Defendants, and that Counter-Defendants, their officers, agents, representatives, servants, employees, attorneys, successors and assignees, and all others in active concert or participation with Counter-Defendants, be enjoined and restrained from:

(i)  copying or making any unauthorized use of Counter-Plaintiffs' Works, in any manner, and publishing, distributing, selling, marketing, displaying, producing, or otherwise infringing, directly or indirectly, enabling, facilitating, promoting, inducing or participating in the infringement of Counter-Plaintiffs' copyrights, including the Works, or exclusive rights protected by the Copyright Act or common law; or,

> (ii) using any simulation, reproduction, counterfeit, copy or colorable imitation of Counter-Plaintiffs' Trade Dress in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any product.

C.  That Counter-Defendants be ordered to pay Counter-Plaintiffs such damages as the trier of fact determines Counter-Plaintiffs have sustained as a result of Counter-Defendants' acts of copyright infringement, trademark infringement, unfair competition, and to account for all gains, profits and advantages derived by Counter-Defendants through these acts.

D.  That Counter-Defendants be ordered to pay Counter-Plaintiffs treble and punitive damages;

E.  That Counter-Defendants be ordered to provide an accounting of all profits resulting from their infringing activities;

F.  That all of Counter-Defendants' Infringing Works be impounded and destroyed;

G.  That the Court award Counter-Plaintiffs' costs, including reasonable attorneys' fees;

H.  That the Court award pre- and post-judgment interest to Counter-Plaintiffs; and

I.  That the Court grant Counter-Plaintiffs all other relief to which they are entitled and such other or additional relief as is just and proper.

## <u>JURY DEMAND</u>

Counter-Plaintiffs hereby demand a trial by jury of all matters triable as of right in the instant cause of action.

Respectfully submitted,

**ATTORNEYS FOR JOHN T. UNGER
AND JOHN T. UNGER, LLC**


/s/ Stephen J. Zralek_____

By:    Stephen J. Zralek (BPR No. 18971)
      Bone McAllester Norton, PLC
      Nashville City Center, Suite 1600
      511 Union Street
      Nashville, TN  37219
      Telephone:  (615) 238-6300
      Facsimile:  (615) 238-6301
      szralek@bonelaw.com

      Mark G. Clark (*pro hac* vice pending)
      Traverse Legal, PLC
      810 Cottageview Drive, Unit G-20
      Traverse City, MI  49684
      Telephone:  (231) 932-0411
      Facsimile:  (231) 932-0636
      mark@traverselgal.com


**CERTIFICATE OF SERVICE**

I certify that on September 17, 2009, I served a copy of the foregoing document via ECF on:


Natalya L. Rose, Esq.
Milom Joyce Horsnell Crow, PLC
3310 West End Avenue, Suite 610
Nashville, TN  37203


/s/ Stephen J. Zralek_____

{00406083.3}